# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN

| | |
|---|---|
| Angelina Almanzar, individually and on behalf of all others similarly situated, | 1:21-cv-09196 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Procter & Gamble Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      The Procter & Gamble Company ("defendant") manufactures, labels, markets, and sells disposable diapers marketed as "Pure" with a "Plant-based liner enriched with shea butter," under the Pampers brand ("Product").

## I.      DIAPERS AND THE ENVIRONMENT USAGE

2.      Disposable diapers have a significant environmental impact.

3.      Disposable diapers often incorporate polypropylene or polyethylene, which are plastics from petroleum, which release carbon dioxide when they are burned and offer no net sequestration of carbon if they are land-filled.

4.      The estimated carbon dioxide emissions from all disposable diapers used by babies in the United States is 2.7 million tons annually.

5.      Reductions in the fossil fuel-based components of diapers will reduce greenhouse gas emissions, and replacement of plastics from petroleum could reduce emissions to almost zero, providing net carbon sequestration from the atmosphere.

6.      The main difference between materials derived from plants compared to those from

fossil fuels is that the former are renewable, while the latter are not.

7.     Non-renewable ingredients like petroleum contributes to pollution and negatively effects human, animal, and environmental health.

8.     Plant-based materials are from renewable sources like bamboo and corn, that remove carbon dioxide from the atmosphere.

9.     According to a trade publication, consumers are increasingly cognizant of how their purchases effect the environment.

10.     One research group concluded that "[C]onsumer preference is driving increased interest in products that are more sustainable to manufacture and safer for the environment."

11.     The result is that companies increasingly market their diapers to appeal to these consumers, by touting their plant-based content.

12.     Over 25% of consumers are seeking ways to purchase products that incorporate renewable and sustainable materials and avoid those made with non-renewable materials.

## II.     THE PRODUCT'S CLAIMS

13.     The Product's label is covered in shades of green, with a green "heart" symbol underneath the words, "Pure Protection," and the statement, "Plant-based liner enriched with shea butter," in green font.





14.     Consumers observing this plant-based claim, and the description of the Product as "Pure," with green shades dominating the front label, will expect the Product to have a significant amount of plant-based materials compared to fossil fuel-based materials.

15.     The other statements, including, "Hypoallergenic – Free of chlorine bleaching, fragrance, parabens & latex*," further the impression that the plant-based content is greater than it is, because these features (their absence) are typically associated with natural plants.

16.     The Product's other claims support the beliefs of consumers that more of the Product

is plant-based than it is. ingredients are plant-based and not from petroleum.

17.     Laboratory analysis, based on the ASTM D6866, Standard Test Methods for Determining the Biobased Content of Solid, Liquid, and Gaseous Samples Using Radiocarbon Analysis, determined that the bio or plant-based content of the Product was only twenty-two (22) percent, compared to seventy-eight (78) percent fossil carbon, from petroleum.

18.     Even though the label states, "Plant-based liner enriched with shea butter," consumers will not know the percentage of the Product's weight the liner constitutes.

19.     Moreover, the other representations, including the heavy use of green and the word "Pure," cause consumers to expect a higher percentage of plant-based materials are used.

20.     Competitor brands of diapers which are advertised as "plant-based" tell consumers the percentage of their product which is plant-based.

21.     The FTC has regulations to guide manufacturers who advertise products made with renewable materials, such as plants. *See* 16 C.F.R. § 260.16.

22.     According to the FTC, "consumers may interpret renewable materials claims differently than marketers may intend." 16 C.F.R. § 260.16(b).

23.     Companies are urged to carefully "qualify any 'made with renewable materials,'" which the Product does, in part, and not sufficiently to clarify the relatively small percentage of the Product that is from plant-based materials. 16 C.F.R. § 260.16(c).

24.     The FTC offers an example of a company marketing its flooring as "made with renewable materials."  16 C.F.R. § 260.16(c).

25.     Reasonable consumers "likely interpret this claim to mean that the flooring also is made with recycled content, recyclable, and biodegradable."

26.     However, unless the flooring is "made with recycled content, recyclable, and

biodegradable," the "made with renewable materials" claim is misleading.

27.     The responsibility is on the company to support any express and reasonably implied claims from its marketing. 16 C.F.R. § 260.16(c).

28.     By promoting the "Plant-based liner," coupled with the other representations, reasonable consumers will expect a higher amount of plant-based materials.

29.     An example of marketing that the FTC uses to show how companies can prevent their claims from misleading consumers states, "Our packaging is made from 50% plant-based renewable materials. Because we turn fast-growing plants into bio-plastics, only half of our product is made from petroleum-based materials." 16 C.F.R. § 260.16(c).

30.     By indicating the percentage of the total packaging which is made with plant-based materials, the marketer has "minimized the risk of unintended claims" and "adequately qualified the amount of renewable materials in the product." 16 C.F.R. § 260.16(c).

31.     According to reports, the Product has only slightly more plant-based materials than standard products from Defendant that are not advertised as plant-based.

## III.   CONCLUSION

32.     A reasonable consumer would expect that the Product contains more than 22% plant-based materials.

33.     Reasonable consumers cannot know, especially at the point of sale, that even though the liner is advertised as plant-based, that this constitutes approximately one-fifth of the Product.

34.     After all, a liner seems to be the most significant part of a diaper, because it is in direct and constant contact with a baby's skin.

35.     Consumers figure that by the time a product gets to the shelves, the companies have "serious people" and "fancy lawyers" who "sign off" on the legitimacy of their labeling.

36. Thus, there is an implicit acceptance that what they are presented with is truthful, accurate, and in their best interest.

37. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

38. By labeling the Product in this manner, Defendant gained an advantage against other companies, and against consumers seeking to purchase a product which contained a greater amount and percentage of plant-based materials than it did.

39. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

40. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

41. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

42. The Product is sold for a price premium compared to other similar products, no less than approximately $35.99 for a package of 76 diapers, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

43. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

45. Plaintiff Angelina Almanzar is a citizen of New York.

46.     Defendant The Procter & Gamble Company, is an Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

47.     Plaintiff and defendant are citizens of different states.

48.     Defendant transacts business within this district, through the marketing, supply, and sales of its products at thousands of stores within this district and sold online to citizens of this district.

49.     Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

50.     Venue is in the Manhattan Courthouse of this District because a substantial part of the events or omissions giving rise to the claim occurred in New York County, i.e., Plaintiff's purchase of the Product and her awareness of the issues described here.

Parties

51.     Plaintiff Angelina Almanzar is a citizen of New York, New York County, New York.

52.     Plaintiff has a child who uses diapers.

53.     Plaintiff is concerned for the environment, and seeks to buy products which are plant-based.

54.     Plaintiff recognizes, and through her consumption activities, seeks to mitigate the negative effects that unlimited fossil fuel usage has on the environment and living things.

55.     Defendant The Procter & Gamble Company, is an Ohio corporation with a principal place of business in Cincinnati, Ohio, Hamilton County.

56.     Defendant developed Pampers, the original mass market disposable diaper brand in the 1950s.

57.     At the time, disposable diapers were used in less than 1% of the billions of diaper

changes in the United States each year.

58.    The Product is available from almost everywhere goods are sold, including convenience stores, grocery stores, big box stores, warehouse clubs, and sold online.

59.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, from stores including Target stores in New York and Bronx counties, and Amazon.com, between April and June 2021, among other times.

60.    Plaintiff bought the Products because she expected they contained a greater amount and percentage of plant-based materials than it did because that is what the representations said and implied.

61.    Plaintiff relied on the words and images on the labels, identified here.

62.    Plaintiff bought the Product at or exceeding the above-referenced price.

63.    Plaintiff would not have purchased the Products if she knew the representations were false and misleading or would have paid less for them.

64.    Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

65.    The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

66.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with their composition.

67.    Plaintiff is unable to rely on the labeling of other products representing they are plant-based because she believes other companies may not be completely truthful.

68.    Plaintiff wants to purchase more plant-based products because she values usage of

renewable materials and reducing usage of fossil fuels for the reasons described here.

69.   Plaintiff relied on the labeling, which included the heavy use of green, "Pure," and "Plant-based liner enriched with shea butter."

Class Allegations

70.   Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of North Dakota, Kansas, West Virginia, and Wyoming, who purchased the Product during the statutes of limitations for each cause of action alleged

71.   Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

72.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

73.   Plaintiff is an adequate representative because her interests do not conflict with other members.

74.   No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

75.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

76.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

77.   Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350

(Consumer Protection Statute)

78.   Plaintiff incorporates by reference all preceding paragraphs.

79.   Plaintiff and class members desired to purchase a product that contained a greater amount and percentage of plant-based materials than it did.

80.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

81.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

82.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

83.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

84.   Plaintiff relied on the representations that the Product's description as "Pure," with the green images and fonts, supported the impression of more than 22% plant-based materials.

85.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

86.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

87.   Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in

fact be misled by this deceptive conduct.

88.   As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

89.   In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq.</em>

90.   The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a greater amount and percentage of plant-based materials than it did.

91.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

92.   This duty is based on Defendant's outsized role in the market as a trusted and leading brand, as described above, which means consumers expect it to be different than other companies without such a reputation.

93.   Defendant is a positive and consistent advocate for babies through its many product lines which benefit babies and their families.

94.   Consumers expect such a company to uphold a standard of honesty.

95.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

96.   Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, researchers, and consumers, to its main offices, and by consumers through online forums.

97.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

98.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

99.    Defendant had a duty to truthfully represent the Product, which it breached.

100.    This duty is based on defendant's position, holding itself out as having special knowledge and experience in this area, as the leading seller of disposable diapers, and the brand which invented this category.

101.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a leading company in this sector.

102.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

103.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

104.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a greater amount and percentage of plant-based materials than it did.

105.    Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of the representations.

106.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

107.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 7, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com